IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

MARTIN E. OBAZEE,

                Plaintiff,

v.                                    Action No. 3:10–CV–215

WELLS FARGO ADVISORS, LLC,

                Defendant.

MEMORANDUM OPINION

I. INTRODUCTION

THIS MATTER is before the Court on defendant Wells Fargo Advisors, LLC's (hereinafter "Wells Fargo") Motion to Dismiss the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq., (hereinafter "ERISA") claims brought in plaintiff Martin E. Obazee's (hereinafter "Obazee") Amended Complaint. (Doc. No. 25.) In its Motion, Wells Fargo contends that Obazee's Amended Complaint is "devoid of factual allegations sufficient to state a claim under ERISA." Obazee contends, in his Opposition, that he can make out an ERISA claim but concedes that he may have failed to properly plead such a claim.

After reviewing the Amended Complaint, the filings on this Motion, and hearing the parties, it is the conclusion of this Court that Obazee has failed to allege facts from which the Court could plausibly conclude that he is entitled to the relief he seeks under ERISA.

1

II.  BACKGROUND

In considering the allegations of fact in the Amended Complaint, the Court "take[s] the facts in the light most favorable to the plaintiff" but "need not accept the legal conclusions drawn from the facts" nor need it "accept as true unwarranted inferences, unreasonable conclusions, or arguments".  Giarratano v. Johnson, 521 F.3d 298, 303 (4th Cir. 2008); see also Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

A.  Obazee's Pleadings

Obazee alleges that he is a naturalized citizen who emigrated from Nigeria and that he was employed by Wachovia Securities, LLC (hereinafter "Wachovia"), now Wells Fargo, from August of 2006 through March or April of 2009.  Obazee alleges that he was recruited by Wachovia and induced to move to Virginia on the promise that he would be hired as a Supervisor and Assistant Vice-President in the Corporate Actions processing unit of Wachovia.  However, Obazee alleges that his offer letter omitted the title of "Assistant Vice-President" and that this "typographical error" took over a year to resolve.  This is but one of Obazee's allegations regarding what appears to have been a rocky start at Wachovia.

Obazee alleges that during the first year of his employment he was subject to numerous racial slurs and epithets by subordinates and was not treated with the respect that peers and supervisors would typically afford an employee with his title.  Obazee also allegedly had several dramatic confrontations with supervisors regarding the manner in which business at Wachovia was being done and the way in which Obazee's unit was managed.  In July of 2007 Obazee alleges that he was given a written warning by a direct

supervisor regarding his performance.  Obazee alleges that in August of 2007, as a result of the ongoing dispute regarding his title and the write-up, he filed a complaint with the Equal Employment Opportunity Commission.

In May of 2007 Obazee alleges that a merger was announced between Wachovia and A.G. Edwards.  Obazee alleges that as a result of the merger, he and other employees were offered the option to go to St. Louis, Missouri, to work at an A.G. Edwards office or to accept a severance package from Wachoiva.  Obazee alleges that the form he was given regarding these options stated that if he was not offered a comparable position in St. Louis, his decision to participate in the selection process would not negatively impact his eligibility for severance benefits under the Wachovia Corporation Severance Plan.  Obazee alleges that on this basis he chose to participate in the selection process for the St. Louis site and went to visit the area in January 2008.  Obazee alleges that he confirmed his interest in relocating with the Wachovia human resources department in November of 2007.

In February of 2008 Obazee alleges that he was confronted by his two female supervisors regarding his attitudes toward women.  Obazee alleges that he was shocked by their suggestion that he was biased against female members of the staff.  Obazee further alleges that while his supervisors admitted that this bias might just be a perception of others, he was referred to some form of sensitivity training.  In March of 2008 Obazee alleges that he again met with his two supervisors and was informed that his new position in St. Louis would be that of "Team Lead".  Obazee alleges that when he inquired about the relative seniority of the position, he was told that it was on par with the position he held at

Wachovia but that the title was defined by A.G. Edwards. In June of 2008 Obazee alleges that he met with a manager from St. Louis, who told him that he would be a Team Lead but that he would report to one of his fellow Assistant Vice-Presidents from Richmond. Obazee alleges that this was the first time he learned that he would now be reporting to a former peer. Obazee alleges that he immediately told the St. Louis manager that this was contrary to the information he had previously been given by the Richmond supervisors. Obazee alleges that after learning he would be supervised by his former peer, he immediately complained to the human resources staff and asked to be allowed to take the previously offered severance package. Obazee alleges that this request was denied, as was a subsequent appeal, and that he was advised that he could appeal the denial under § 502 of ERISA.

Obazee alleges that after co-workers learned he was not going to St. Louis, he was subjected to further racial epithets related to his "going back to Africa." Obazee's Amended Complaint contains addition allegations regarding his ultimate termination in either March or April of 2009 (the exact date is a point of contention) which are not material to this Motion.

### B. Obazee's Claims

Obazee filed his initial Complaint on March 29, 2010. The ERISA claims now before the Court were first raised in Obazee's Amended Complaint, filed on July 30, 2010. Obazee's Amended Complaint does not contain itemized counts. It does, however, contain a"Request for Relief" seeking compensatory damages under Title VII of the Civil Rights Act

4

of 1964, lost wages, severance benefits pursuant to ERISA, pay wrongfully withheld by Wachovia, $300,000 for emotional pain and anguish, and fees and costs.

Obazee only identifies his claim as falling under § 510 of ERISA in his introductory paragraph.  In his Opposition to Wells Fargo's Motion to Dismiss, Obazee also contends that he is pursuing an ERISA § 502 claim for the payment of benefits he is owed under the Wachovia Corporation Severance Plan.

### III.  DISCUSSION

A motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims set forth in the pleadings.  See Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).  To be legally sufficient, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" in both "law and fact."  Francis, 599 F.3d at 192-3 (citing Fed.R.Civ.P.8(a)(2)).  The pleadings need not be supported by evidence, but they must "state a claim for relief that is plausible on its face."  Id. at 193 (citing Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)).  A plausible claim must contain more than an "unadorned, the-defendant-unlawfully-harmed-me accusation."  Iqbal, 129 S.Ct. at 1949.  Rather, a plaintiff must provide "factual enhancement" not just "naked assertions" regarding the elements of a cause of action.  See Francis, 588 F.3d at 193.  While the Federal Rules of Civil Procedure state that only allegations of fraud or mistake must be stated with particularity–malice, intent, knowledge and other states of mind being alleged generally–the Supreme Court in Iqbal cautioned that "where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it

stops short of the line between possibility and plausibility of 'entitlement to relief'." 129 S.Ct. at 1949 (citing Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2006)(allegations of antitrust conspiracy must allege facts that are more than merely consistent with illicit agreement)); Fed.R.Civ.P. 9(b).

Although pro se pleadings are typically given a liberal construction, see Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Noble v. Barnett, 24 F.3d 582, 587 n. 6 (4th Cir. 1994), this Court has evaluated complaints filed without the assistance of counsel according to the same standards of sufficiency used to measure any other complaint, see, e.g., Smith v. Commonwealth of Virginia, 2009 WL 2175759, *2 (E.D.Va. 2009)(Payne, J., applying Twombly and Iqbal standards in civil rights complaint).

With these standards in mind, the Court now turns its attention to Obazee's ERISA claims.

### B.  Obazee's ERISA § 510 Claim

ERISA § 510, 29 U.S.C. § 1140, prohibits two forms of interference with "protected rights".  First, it is "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140 ("Exercise Claims").  Second, it is unlawful to do the same for the "purpose of interfering with the attainment of any right to which such [a] participant may become entitled under the plan." 29 U.S.C. § 1140 ("Attainment Claims").  As the Fourth Circuit has noted, the recognized purpose of § 510 is to "prevent unscrupulous employers from discharging or harassing their

6

employees in order to keep them from obtaining vested pension rights" or rights which may vest. See Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 237 (4th Cir. 1991)(holding that § 510 should be given broad effect). While severance provisions in individual employment contracts may not be subject to the provisions of ERISA, where employer sponsored plans address severance, they are governed by § 510. See Biggers v. Wittek Ind., Inc., 4 F.3d 291, 293 (4th Cir. 1993)(severance plans covered); but see Gresham v. Lumbermen's Mutual Casualty Co., 404 F.3d 253, 261 (4th Cir. 2005)(contractual provision not necessarily covered).

While the elements of a claim regarding the "exercise" of rights are set out in the statute, to make a claim of intentional interference under § 510, a plaintiff must typically show 1) that there was an adverse employment action, 2) that such action was taken with the purpose of interference with benefits, 3) and that he was otherwise eligible for the benefit. See, Conkwright, 933 F.3d at 239 (applying 'McDonnell Douglas' system of indirect proof); see also Shores v. Lucent Techs., Inc., 203 F.3d 822 *3 (4th Cir. 2000)(unpublished opinion using same test). In construing the "purpose" requirement of § 510, the Fourth Circuit has required proof that the malefactor acted with the specific intent of depriving the plaintiff of the relevant benefit. See Conkwright, 933 F.3d at 238 (firings with an incidental effect on pension benefits not actionable).

While there are few reported cases specifically addressing the question of what a plaintiff must allege in support of a § 510 claim at the pleading stage, see, e.g., Conkwright, 933 F.3d at 232 (summary judgment claim); Shores, 203 F.3d 822 at *1 (same), even

7

before the imposition of a heightened pleading standard in Iqbal, 129 S.Ct. at 1949, and Twombly, 550 U.S. at 555, district courts typically required plaintiffs to at least allege the elements of a prima facie case. See, e.g., Mouly v. E.I. DuPont de Nemours & Co., 1998 WL 661535, *3 (W.D.Va. 1998)(dismissing pro se complaint which failed to allege purposeful discrimination until response to motion to dismiss) but see, Warner v. Buck Creek Nursery, Inc., 149 F.Supp.2d 246, 253 (W.D.Va. 2001)(the term 'specific intent' is not sacramental); Heimann v. National Elevator Indus. Pension Fund, 187 F.3d 493, 509 (5th Cir. 1999)(same).

Obazee's Amended Complaint does not specify whether he is seeking relief under the first or second part of § 510. However, he fails to make out a case under either prong of the statute when the elements of each are compared to the pleadings. First, nowhere does Obazee allege that he was discriminated against for exercising his rights under any employee benefit plan. Thus, even if the Court were to give Obazee's pleadings the liberal construction he requests, any "exercise" claim must be dismissed. See, e.g. Mouly, 1998 WL 661535 at *3; see also Smith, 2009 WL 2175759 at *2 (dismissing Voting Rights Act claim which failed to allege essential elements). Second, the allegations in Obazee's Complaint are, at the most, merely not inconsistent with wrongdoing under the "attainment" prong of § 510. This is not sufficient to show his entitlement to relief under the new pleading standards. See Twombly, 550 U.S. at 555 (allegations that are merely consistent with conspiracy are insufficient). Under the precedents governing this Court, Obazee must show an adverse employment action, taken with the specific intent to deprive

8

him of certain benefits, and that these benefits were covered by ERISA. See Conkwright, 933 F.3d at 329. Even if the Court accepts the proposition that the severance benefits were subject to ERISA, see Gresham, 404 F.3d at 261(severance provisions not connected with ERISA plan not covered), Obazee's pleadings fail to show that either an adverse action was taken or that it was taken with the specific intent to deprive him of benefits. To begin, the pleadings confirm that Obazee was offered the same relocation option as other eligible employees at Wachovia and that he was offered a position with equivalent responsibilities under the A.G. Edwards organizational structure. The only fact from which the Court could infer that this action was somehow "adverse" is that one of Obazee's former peers would have become his supervisor.[1] Although it might be possible to infer that this somehow constituted discrimination, given the allegations in the pleadings it seems just as likely that Wachovia was simply promoting a staff member who had fewer negative comments in his personnel file. Further, even if the Court were to accept that the decision to promote Obazee's former peer constituted an adverse action, it is unclear how the Court could infer that this action was taken with the purpose of denying Obazee his severance benefits and that his inability to accept the severance option was not merely an incidental effect of that decision. See Conkwright, 933 F.3d at 252.

---

[1] Wells Fargo cites a number of foreign precedents for the proposition that offering an employee a different job can never be deemed an "adverse employment action". See, e.g., Pelosi v. Schwab Capital Mkts., L.P., 462 F.Supp.2d 503, 512 (S.D.N.Y. 2006); Blessing v. J.P. Morgan Chase & Co., 394 F.Supp.2d 569, 583 (S.D.N.Y. 2005); Stout v. Bethlehem Steel Corp., 957 F.Supp. 673, 694 (E.D.Pa. 1997). While a job offer is certainly inconsistent with interference, the Court is not prepared to adopt such a broad rule.

While Obazee alleges that he had not been told of his co-worker's promotion or of the new job title when he chose to accept the transfer, he never alleges that his superiors intentionally withheld this information. Further, although Obazee has subsequently argued that this was part of a pattern of making false statements and that had he known of his new supervisor, he never would have accepted the position, Obazee cites no authority for the proposition that tricking an employee into accepting a demotion, without more, constitutes an ERISA violation or that Wells Fargo had any obligation to disclose these facts to him. Finally, in his Opposition, Obazee actually concedes that his Amended Complaint is deficient in failing to establish a connection between the alleged misrepresentation and his inability to obtain severance pay.

Since the most that can be said for Obazee's Amended Complaint is that it alleges facts not inconsistent with wrongdoing under § 510, this portion of his ERISA claim must be dismissed as Obazee has failed to take the additional step of showing some wrong doing which would entitle him to relief. See Francis, 599 F.3d at 192; see also Iqbal, 129 S.Ct. at 1949. While Obazee's status as a pro se plaintiff might justify his failure to set out the specific counts on which he wishes to proceed, it cannot excuse his failure to allege the essential elements of an offense against him. See, Smith, 2009 WL 2175759 at *2.

### B. Obazee's ERISA § 502 Claim

ERISA § 502(a), 29 U.S.C. § 1129, creates a cause of action for any "participant or beneficiary" to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the

plan." 29 U.S.C. § 1129(a)(1). An action may also be brought against an administrator who fails to provide certain information about employee health or retirement plans at an employee's request. See 29 U.S.C. § 1129(c). However, any action based on § 502 must actually join the plan or plan administrator. See, e.g., SunTrust Bank v. Aetna Life Ins. Co., 251 F.Supp.2d 1282, 1291-92 (E.D.Va. 2003)(dismissing claim for inadequate joinder and other inadequacies).

While Obazee admits that he received instructions from the Wachovia Corporation Severance Plan regarding the filing of a § 502 appeal, Obazee has inexplicably failed to join the plan administrator. He has also failed to allege that the severance benefits offered were part of an ERISA regulated employee benefit plan. In light of these deficiencies this portion of Obazee's Amended Complaint must also be dismissed.

## IV. CONCLUSION

In light of the foregoing, and Obazee's admitted failure to properly set out an ERISA claim, it appears that he has failed to show his entitlement to relief in law and fact. While Obazee suggests that he deserves special consideration due to his pro se status, the Court cannot overlook an admittedly deficient claim. Thus, Wells Fargo's Motion to Dismiss is GRANTED and Obazee's ERISA § 510 and § 502 claims are DISMISSED.

Let the Clerk send a copy of this Memorandum Opinion to all parties of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Chief United States District Judge

Entered this __3rd__ day of September 2010